**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **EP-21-CR-1743-DB** |
| | § | |
| **DESHAY LAMIEL GRICE.** | § | |

## MEMORANDUM OPINION AND ORDER

Mr. Deshay Grice ("Mr. Grice") was arrested by officers of the El Paso Police Department ("EPPD") as he was about to enter a vehicle that was suspected stolen.   Mot. 2, ECF No. 23.   The police conducted a search of the vehicle, which included a search of a bag containing a firearm.   *Id.*   Mr. Grice was indicted for possession of that firearm.   Indictment, ECF No. 10.   Mr. Grice filed a Motion to Suppress ("Motion"), arguing that the search violated his Fourth Amendment rights and that evidence relating to the firearm should therefore be suppressed.   Mot., ECF No. 23.   A hearing was subsequently held on the Motion.   Minute Entry, ECF No. 40; Transcript, ECF No. 43.   The Court, for the reasons stated below, will deny the Motion.

## BACKGROUND

### 1. The Search

On the evening of September 29, 2021, Officer Joshua Longenbaugh ("Officer Longenbaugh"), a member of the El Paso Police Department's Auto Theft Task Force, identified a vehicle listed on EPPD's "hot sheet," which contained the "make, model, license plate, VIN, [and] year, [of] vehicles that have been reported [stolen] here in El Paso."   Transcript 5, ECF No. 43.   The car was parked in an apartment complex in Northeast El Paso.   *Id.* at 4–5.   Officer Longenbaugh confirmed through the National Crime Information Center's

(NCIC) database that the vehicle had in fact been reported stolen. *Id.* at 6. He and Officer

Jessica Costa ("Officer Costa"), another officer from the Auto Theft Task Force, set up

surveillance on the car. *Id.* at 6–7, 60–61. Mr. Grice, with a black bag strapped across his

chest, approached the car along with another man and both entered the car. *Id.* at 30–31.

Officers Longenbaugh, Costa, and at least one other officer, then initiated a "takedown" of the

two individuals resulting in their arrest. *Id.* at 7–8, 72–74. Mr. Grice and the other individual

were removed from the car. *Id.* at 9, 74. At the time of the vehicle search, which occurred

within minutes of the takedown, Mr. Grice was handcuffed and "seated on the curb at the rear of

the vehicle." *Id.* at 9, 44–45, 50.

Officer Longenbaugh then conducted a search of the vehicle. *Id.* at 10–11.

During that search, he found a bag[1] on the driver's side of the car,[2] and upon opening the bag he

found a firearm and narcotics. *Id.* at 11–12, 52. Officer Longenbaugh provided the serial

number of the firearm to Officer Costa, who then performed an NCIC check which identified the

firearm as stolen. *Id.* at 14, 66–67.

Mr. Grice was subsequently indicted on two counts related to possession of the

firearm, one for being a felon in possession of a firearm and the other for possession by an

unlawful user of a controlled substance. Indictment, ECF No. 10; 18 U.S.C. §§ 922(g)(1), (3).

## 2. The Motion

Mr. Grice argues in his Motion that the search was unconstitutional as it was

---

[1] During the suppression hearing, the bag was introduced into evidence and was variously referred to as a "satchel," a "purse," a "man purse," and a "bag." The Court will refer to it simply as a "bag."
[2] There was some dispute about the location of the bag—whether on the driver's seat or on the floor of the car. Mot. 7–8, ECF No. 23; Resp. 7–8, ECF No. 25. At the suppression hearing, Officer Longenbaugh, the sole officer involved in the search of the automobile testified that the bag was found on the driver's seat. Transcript 39–40, ECF No. 43. The Court finds no reason to doubt this testimony, and in any event the precise location of the bag is not essential to any of the Court's conclusions.

conducted without a warrant and does not fall under any recognized exception to the warrant requirement of the Fourth Amendment.   Mot. 2, ECF No. 23.

The Government grants that the search was conducted without a warrant, but offers two arguments against suppression: first, that Mr. Grice lacks "Fourth Amendment standing" to challenge the search and second, that the search does in fact fall under at least one recognized exception to the warrant requirement.   Resp. 1, ECF No. 25.   The Government raises three possible exceptions.   First it argues that the search falls under the "search incident to arrest" exception or the "automobile exception," which it refers to as "[o]verlapping with the search incident to arrest."   *Id.* at 5–7.   It also argues that the search is allowable under the inventory search exception to the warrant requirement, as "the firearm would have inevitably been discovered during a lawful routine inventory search."   Resp. 3, 7, ECF No. 25.

Multiple factual issues presented themselves in the briefs.   Mr. Grice indicated, and the Government did not dispute, that initial police reports referred to the search as both "inventory" and "incident to arrest," rendering it unclear what type of search the police believed they were conducting.   Mot. 7–9; *see also* Resp. 7–8.   The briefs also pointed to discrepancies about the location of the bag, which Mr. Grice suggested could indicate that the reports were untrustworthy.   *Id.* at 7–8.   Mr. Grice also pointed out confusion about the location of certain objects that perhaps played some role in the search, including the bag itself and the keys to the car.   *Id.*

To clarify the issues and resolve the factual questions presented by the Motion, the Court held a hearing.

### 3. The Hearing

While there were some small discrepancies between the testimony of Officer

Longenbaugh and Officer Costa about such matters as the location and nature of the keys, as well as the location of the bag during the search, their testimony presented a clear and credible chronology of the events leading up to the search.   Officer Longenbaugh, the officer who removed Mr. Grice from the vehicle and performed the search, was consistent in his descriptions of the events at the scene.   *See* Transcript, 4–59, ECF No. 43.   Any inconsistency between his and Officer Costa's testimony can be attributed to the fact that Officer Costa did not participate in the search and, from her vantage point on the opposite side of the car, did not have as clear a view of Mr. Grice's movements.   *See id.* at 27, 75 (describing relative locations of the two officers).

Unfortunately the hearing did not clarify the justification for the warrantless search conducted by Officer Longenbaugh.   During the hearing, Officer Longenbaugh and the Government referred to both inventory searches and searches incident to arrest without clear demarcation of their distinct purposes and limitations.   Officer Longenbaugh first described the search in terms that suggest he was performing an inventory search of the car:

> Q.  [W]hat [was] the purpose of that search?
> A. The purpose of the search is to identify any items in the vehicle
> that might not belong to the owner of the vehicle and for our
> protection to account for all the items inside the vehicle.

Transcript 11, ECF No. 43.   However, subsequent testimony showed that Officer Longenbaugh did not clearly distinguish between an inventory search and a search incident to arrest:

> Q.  [. . .] So once you saw the satchel on the seat of the—on the
> driver's seat of the car, did you reach in and pick it up?
> A. Correct.
> Q. Okay. And you opened it up?
> A. Correct.
> Q. Okay. And you testified earlier that the reason you opened it up
> is because you were doing an inventory; is that right?
> A. Correct.
> Q. Of the vehicle?

4

> A. Correct.
> Q. Okay. In your report that you looked at earlier, you wrote that
> you were doing a search incident to arrest?
> A. Correct.
> Q. All right. But today you're testifying that you opened the bag as
> the result of an inventory search; is that right?
> A. It would be both.
> Q. Okay. So you're saying that you were doing it both as a search
> incident to arrest and as an inventory search; is that right?
> A. Correct. We have to do both.

*Id.* at 41.   Subsequently, on cross-examination by Mr. Grice's attorney, Officer Longenbaugh

stated that it was his practice to search automobiles whenever they are reported as stolen:

> Q. . . . [W]hen you locate a stolen vehicle you search the items
> within that vehicle, correct?
> A. Correct.
> Q. And that's not just for inventory purposes, correct?
> A. Correct.
> Q. Okay. You search it because it is—the vehicle has been
> reported as stolen?
> A. Correct.
> Q. It's essentially a crime scene?
> A. Correct.

*Id.* at 56–57.

Finally, during closing, the Government added another possible justification for

the search, stating that "[t]he automobile exception and the search incident to arrest exception

can apply . . . ." *Id.* at 84.   The Government also stated that

> . . . it is impossible to separate the searches that happened in this
> case and say, This was the search that occurred for the crime of the
> stolen vehicle, search incident to arrest versus this is the inventory
> that was done, because essentially they just did them both
> simultaneously. They had to search the vehicle because it was a
> stolen vehicle.

*Id.* at 85.   It thus remained unclear—even to the Government—exactly which exception to the

Fourth Amendment's warrant requirement, if any, justified Officer Longenbaugh's warrantless

search of the car.

The Court will examine whether the search can be classified as any of three types of searches referred to in the briefings and at the suppression hearing: inventory searches, searches conducted under the automobile exception, and searches incident to arrest.

## LEGAL STANDARD

A defendant seeking to suppress evidence illegally obtained must move to do so before trial.   Fed. R. Crim. P. 12(b)(3)(C).   The burden is generally on the defendant to prove, by a preponderance of the evidence, that the evidence in question was obtained in violation of his rights.   *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001); *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) ("It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing.").

The Fourth Amendment guarantees individuals the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. CONST. amend. IV.   Evidence obtained in "violation of the Fourth Amendment will be suppressed and excluded from consideration."   *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014).

Warrantless seizures—including arrests—are "*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions."   *United States v. Buchanan*, 70 F.3d 818, 825 (5th Cir. 1995) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)) (internal quotations omitted).   Warrantless searches and seizures are unreasonable unless conducted pursuant to a well-recognized exception. *See United States v. Pickett*, 598 F.3d 234 (5th Cir. 2010); *see also Terry v. Ohio*, 392 U.S. 1 (1968).   Thus, when a law enforcement officer acts without a warrant, the government has the burden of proving by a preponderance of the evidence that a challenged search or seizure was constitutional.   *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

To raise a Fourth Amendment claim, a defendant must first show the search or seizure "infringed [a Fourth Amendment] interest of the defendant" himself. *United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)). "A defendant may object to the intrusion of a constitutionally protected area in which he has a property interest or government action that violates his reasonable expectation of privacy in the place searched." *See United States v. Jones*, 565 U.S. 400, 407 (2012); *see also Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018).

Recognized exceptions to the warrant requirement include inventory searches, certain automobile searches, and searches incident to arrest. An inventory search "is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or dispute over lost or stolen property, and (3) protecting the police from danger." *United States v. Shaw*, 578 F. App'x 363, 365–66 (5th Cir. 2014) (internal quotations and citations omitted). "The procedures 'must sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches.'" *Id.* at 366. "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Both the "search incident to arrest" and searches under the "automobile exception" may be motivated by a search for evidence. "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. at 332, 351 (2009). Under the automobile exception, "officers may conduct a search if they have probable cause to believe that the vehicle

7

contains contraband or evidence of a crime." *United States v. Ned*, 637 F.3d 562, 567 (5th Cir. 2011) (internal quotation and citations omitted).

**ANALYSIS**

The Court first determines that Mr. Grice's interest in his bag is sufficient to enable him to challenge the search of his bag and of the car.   The Court then discusses the applicability of the three search exceptions raised by the Government as possible justifications for the warrantless search.   The Court first examines the inventory exception and concludes that the search does not fall under such exception.   It then turns to the search incident to arrest and the automobile exception, both of which allow evidentiary searches in certain contexts.   The Court finds that the search of both the car and the bag is allowable as a search incident to arrest, justified by the search for evidence related to the offense of the crime of arrest.   The Court does not ultimately determine whether the search would be allowed under the automobile exception, which requires probable cause to search both the car and the bag.

### 1. Mr. Grice's Protectible Interest in the Bag Allows Him to Challenge the Search on Constitutional Grounds.

The Government argues that Mr. Grice cannot challenge the search of the car, and similarly cannot challenge the search of the bag found within the car, because he has no protectible Fourth Amendment interest in the car or in the bag.   Resp. 4–5, ECF No. 25.   While the Court agrees that Mr. Grice has no cognizable Fourth Amendment interest in the car, it finds that Mr. Grice does have such an interest in the bag which contained the firearm, as he had a "reasonable expectation of privacy" in the bag.   Therefore Mr. Grice can challenge the search of his bag.

The Government cites the Supreme Court's opinion in *Rakas v. Illinois* to argue that Mr. Grice cannot challenge the search of the automobile because he had neither a property

8

nor a possessory interest in the searched automobile.   Resp. 4, ECF No. 25; *Rakas v. Illinois*, 439 U.S. 128 (1978)).   In *Rakas*, the Court held that an individual could not claim that a search of an automobile violated his Fourth Amendment rights when that individual "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized."   439 U.S. at 148.   *Id.*   Without any such rights, the individual could not show the interest necessary for a Fourth Amendment claim: a "legitimate expectation of privacy."   *Id.*   The Court agrees that Mr. Grice has neither property possessory nor possessory interests in the car.

The same cannot, however, be said of the bag found inside the car during the search.   Mr. Grice was carrying the bag with him before entering the car and placed it inside the car when he was asked by Officer Longenbaugh to exit.   Transcript 30–31, ECF No. 43.   His possession of the bag is undisputed and legally unchallenged, and it gives him a "legitimate expectation of privacy" in the bag.   *See* Resp. 4–5, ECF No. 25; Reply 3, ECF No. 26.

It is of course true that one's privacy interest in so-called "containers"[3] found in a car may be overridden by the needs of law enforcement.   But the Supreme Court has regularly recognized the basic legitimacy of individuals' expectations of privacy in such containers.   It has help that such expectation is "reduced" but not erased when the container is in a car, and it has handled questions about the legitimacy of container searches by balancing—without dismissing—that expectation against competing considerations.   *See, e.g.*, *Wyoming v. Houghton*, 526 U.S. 295 (1999) (balancing "law enforcement needs" against a passenger's "reduced expectation of privacy" in regard to containers in cars); *United States v. Ross*, 456 U.S.

---

[3] In *New York v. Belton*, the Supreme Court gave a useful definition of a "container" as "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like."   *Belton*, 453 U.S. at 461.   On this definition, there is no question that the "bag" at issue in this case was a "container," making relevant the Court's container-related jurisprudence.

798, 823 (1982) (finding that, in regard to containers in cars, "the individual's interest in privacy must give way to the magistrate's official determination of probable cause").   The *Rakas* case, which does not involve a container of any sort, is thus irrelevant to the question of whether Mr. Grice has a legitimate expectation of privacy in the bag.

The Court holds that Mr. Grice does have a legitimate expectation of privacy in the contents of the bag, and thus has "standing" to claim that his Fourth Amendment rights were violated when the police searched his bag.   Since the Government makes no argument that the police had probable cause to search the bag itself but instead seeks to justify the search of the bag as part of a justifiable search of the car, the Court must address the constitutionality of the search of the car.

### 2. The Court Will Make an Objective Inquiry into the Applicability of Each Exception, Without Regard to the Officer's Motivations.

In its Response, the Government states that "[t]he Court should review whether the officers' actions were allowable under the Fourth Amendment, and not whether the officers—who are not licensed attorneys—properly named the correct exception to the warrant requirement in drafting their reports."   Resp. 7, ECF No. 25.   With this statement the Court fully agrees.

The Supreme Court has stated, though inelegantly, that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."   *Whren v. United States*, 517 U.S. 806, 813 (1996) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).   As put more simply by the Seventh Circuit: "The reasonableness of a search does not depend on the officer's subjective motivations; the inquiry is, of course, *objective.*"   *United States v. Edwards*, 769 F.3d 509, 516

(7th Cir. 2014).

The Court will therefore conduct an objective inquiry into the applicability of three distinct exceptions to the warrant requirement.   It will first examine the inventory search, and then the two types of allowable evidentiary searches: the search incident to arrest and the search conducted under the automobile exception.

### 3. The Police Did Not Follow a Standardized Procedure for an Inventory Search.

Several times during the suppression hearing, Officer Longenbaugh referred to the search of the stolen car as an "inventory search."   *See* supra 4–5.   The Government further argues in its Response that "the firearm would have inevitably been discovered during a lawful routine inventory search," perhaps conceding that the search as performed was not itself a "lawful routine inventory search."   Resp. 3, 7, ECF No. 25.   The Court will therefore determine whether the search as conducted was a lawful inventory search, and then it will determine whether a lawful inventory search would have yielded the firearm.

An inventory search is valid when "it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger."   *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008). "The underlying rationale for allowing an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of the inventory search.   This absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence of crime."   *Colorado v. Bertine*, 479 U.S. 367, 376 (1987).

The Court determines whether the search was a proper inventory search by

11

examining whether the search adhered to "standardized regulations and procedures." *Zavala*,

541 F.3d at 579.   In this case it did not.   Mr. Grice submitted pages from the El Paso Police

Department's Procedures Manual, which states the procedures put in place by the EPPD for

conducting inventory searches.   Supplemental Exhibit 4, ECF No. 31 ("Procedures Manual").

The Procedures Manual states that "[c]losed containers in the vehicle will not be opened for

inventory procedures, except as provided below," and then lists the appropriate circumstances

and procedures for opening of closed containers:

> A. Supervisor Discretion.   If a compartment cannot be opened or a
> closed container appears to contain valuable property, perishable
> property, or dangerous property, officers will notify a supervisor.
> Supervisors may decide to open and inventory a closed container
> or compartment in order to protect the Department from claims of
> loss, theft, or damage to property, to protect officers or the public
> from danger, or to preserve perishable goods.
> B. Reporting. The name of the supervisor, time of contact,
> supervisor's instructions, and damage caused by the inventory will
> be recorded in the Complaint Report. If a complete inventory
> cannot be made, officers will note the reason in the report.
> C. Disposition of property.   Property which can be transported
> with the owner will be sent with the owner. . . .
> D. Commercial property. In cases involving commercial freight . . .

*Id.*

Section "D" is irrelevant to Mr. Grice's case, as it does not "involv[e] commercial

freight."   *Id.*   Sections "B" and "C" do not describe circumstances justifying the opening of

containers, but instead create procedures for police officers to follow prior to and after searches

involving the opening of containers.   *See id.*   Only section "A" defines occasions when closed

containers may be opened: those occasions when "a compartment cannot be opened or a closed

container appears to contain valuable property, perishable property, or dangerous property . . . ."

*Id.*   It requires that on those occasions "officers will notify a supervisor," who "may decide to

open and inventory a closed container or compartment in order to protect the Department from

claims of loss, theft, or damage to property, to protect officers or the public from danger, or to preserve perishable goods." *Id.*

Officer Longenbaugh's testimony at the suppression hearing revealed that he did not follow these procedures. *See* Transcript 41–49, ECF No. 43. Officer Longenbaugh stated that a supervisor was present during the search but also stated that the decision to open the bag was made by him, rather than the supervisor. *Id.* at 46. Thus the opening of the container was made in contravention of the Procedures Manual, and the search was not a valid inventory search. *See* Procedures Manual 4, ECF No. 31.

The Government implies that even if the search was not a properly-conducted inventory search, a properly-conducted search would have turned up the firearm. *See* Resp. 7, ECF No. 25. The problem with this argument is the nature of the procedures themselves. In discussing the inventory exception, the Supreme Court has emphasized the importance of "standardized procedures and regulations" which limit the discretion of officers conducting inventories. *See Shaw*, 578 F. App'x at 366. The EPPD's Procedures Manual does little to limit the discretion of officers conducting such searches; instead it merely shifts near total discretion to search or not to search from officers who are not deemed "Supervisors" to those who are. *See* Procedures Manual 4, ECF No. 31.

The wide discretion afforded officers creates two severe problems for the Government's argument about "inevitability." First, it is impossible to know, or even to estimate, the likeliness that any inventory search conducted according to these guidelines would have led to the discovery of the firearm, as it is simply impossible to know whether a supervisor, notified that a container "appears to contain valuable property, perishable property, or dangerous property," would decide that opening the container would "protect the Department from claims

13

of loss, theft, or damage to property, to protect officers or the public from danger, or to preserve perishable goods." *See id.* Thus the Court cannot say, based on the Procedures Manual, that the bag "inevitably" would have been opened and the firearm discovered.

Second, it is impossible to say that any search conducted with such wide discretion would meet the Supreme Court's requirements for a valid inventory search. As the Fifth Circuit has stated, procedures for an inventory search "must sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *Shaw*, 578 F. App'x at365–66 (5th Cir. 2014) (internal quotations and citations omitted). A procedure which allows a supervisor to determine whether opening a container would "protect the Department from claims of loss, theft, or damage to property, to protect officers or the public from danger, or to preserve perishable goods," likely lacks a sufficient limiting principle to prevent that supervisor from "rummaging in order to discover incriminating evidence." Procedures Manual 4, ECF No. 31; *Wells*, 495 U.S. at 4.

Officer Longenbaugh's testimony shows some of the danger of allowing wide discretion to officers in the field. Officer Longenbaugh stated that he based his decision to search the bag on "the way [Mr. Grice] was wearing it" and on the "size of the bag," which suggested to him that it might contain valuables or something dangerous. Transcript 46–47, ECF No. 43. These factors are a far cry from the "standardized regulations and procedures" that provide the basis for the inventory search exception. *See Shaw*, 578 F. App'x at 365–66.

Thus, the failure to acquire a warrant for the search of the bag cannot be excused as under the inventory exception.

**4. The Search of the Car and Any Containers Within It Was Allowable as a Search Incident to Arrest, But Not as a Search Conducted Under the Automobile Exception.**

14

The Government argues that the search performed by Officer Longenbaugh was "allowable as a search incident to arrest and under the automobile exception." Resp. 5, ECF No. 25. Because both searches incident to arrest and those conducted under the automobile exception can be searches for evidence, the Court examines them together. The Court finds that the warrantless search performed by Officer Longenbaugh was valid as a search incident to arrest. It does not determine whether it would be valid under the automobile exception.

### a. Search Incident to Arrest

In *New York v. Belton*, the Supreme Court articulated the search incident to arrest doctrine, stating that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. 454, 460 (1981). Such warrantless searches were justified primarily by a recognition of police officers' needs "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape," *Id.* at 457 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

Subsequently, in *Arizona v. Gant*, the Court limited the application of *Belton* while also adding a new and distinct justification for search, borrowed from Justice Scalia's opinion in *Thornton*. *Arizona v. Gant*, 556 U.S. 332, 335 (2009); *see also Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring). The searches referred to in *Belton*, which were motivated by the need for officer safety, would be limited to contexts in which "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. And borrowing from a concurring judgment in the *Thornton* case decided a few years earlier, the Court also allowed for a search incident to arrest when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the

vehicle." *Id.* at 343 (quoting *Thornton,* 541 U.S. at 632 (Scalia, J., concurring)).   Police may conduct such a search for evidence "even though probable cause to search is lacking, and there is no risk of evidence destruction by the defendant."   *Id.* at 344.

Notably for Mr. Grice's case, searches of automobiles motivated by either officer safety or the need to gather evidence could include searches of containers found in those automobiles.   In limiting the circumstances when police can conduct safety-motivated "*Belton* searches," without limiting their scope, the Court noted that such searches "authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space."   *Id.* at 345.   When referring to evidentiary searches, the Court stated that in many cases, "including *Belton* and *Thornton,* the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein."   *Id.* at 343–44.   Thus, if the search of the car is justifiable as a search incident to arrest, the search of the bag is also justifiable.

Officer Longenbaugh testified at the suppression hearing that, upon his arrest, Mr. Grice was handcuffed and placed on the ground behind the car.   Transcript 50, ECF No. 43.   He remained there during the search of the vehicle.   *Id.*   Since "the arrestee" was not "unsecured" and was not "within reaching distance at the time of the search," the first *Gant* rationale cannot justify the vehicle search.   *See Gant,* 556 U.S. at 343.   The search is thus valid only if the Government is correct in its assertion that "the Officers had reason to believe that evidence related to the crime of unauthorized use of a motor vehicle may be discovered within the stolen automobile or in the area surrounding the automobile."   Resp. 6, ECF No. 25; *see also Gant,* 556 U.S. at 343.

Mr. Grice asserts that the evidentiary exception articulated in *Gant* "only applies

when a defendant has already been arrested for something like a drug offense, for which there is reason to believe there may be additional evidence in the vehicle." *Id.*; *Gant*, 556 U.S. at 344. He further asserts that the facts of his case are analogous to those in *Gant*, in which the Court invalidated an evidentiary search of an automobile following the arrest of the driver for driving on a suspended license. Mot. 6–7, ECF No. 23; *Gant*, 556 U.S. at 335. He argues that "[u]nauthorized use of a motor vehicle is considerably more like the traffic offense in *Gant* . . . and is less likely to have physical evidence that warrants searching the vehicle and containers therein." *Id.*

The Court disagrees with Mr. Grice. Unauthorized use of a motor vehicle is different from the traffic offense in *Gant* in significant ways that make a search for related evidence much more reasonable. The offense of driving with a suspended license involves only the facts that the driver was driving and that his license has been suspended; neither the car itself nor its contents can have any relevance to those facts. Unauthorized use of a motor vehicle, on the other hand, involves the car as an integral part of the offense. Thus the car itself and its contents are inherently "related to the crime of arrest," as required for a search under *Gant*. *See Gant*, 556 U.S. at 343. Further, the car itself is likely to contain evidence of the offense, be it evidence related to the taking of the car or evidence related to ownership of the car. Such evidence is likely to be found in a glove compartment or in a closed container within the car. Officer Longenbaugh's search of the car, which included the search of Mr. Grice's bag, was therefore justifiable as a search incident to arrest.

The Court's conclusion that the search was valid as a search incident to arrest is supported by the Seventh Circuit's opinion in the *Edwards* case, which presents circumstances very similar to those presented here. *Edwards*, 769 F.3d at 511–513. The Government in its

17

Response and again at the suppression hearing cited the case as supporting the proposition that a warrantless search of a stolen vehicle is allowable as a search incident to arrest and under the automobile exception.   Resp. 6, ECF No. 25; Transcript 85, ECF No. 43; *Edwards*, 769 F.3d at 509.   However, this Court agrees with the Seventh Circuit only insofar as it concludes that a search of an automobile suspected stolen is allowable as a search incident to arrest.   For reasons explained below, it does not hold, as the Seventh Circuit does in *Edwards*, that the automobile exception is also applicable.

In *Edwards*, the police stopped the car Mr. Edwards was driving because Mr. Edwards was suspected of using a motor vehicle without authorization.   769 F.3d at 511–12. The search of the car following his arrest revealed a pouch containing marijuana and a sawed-off shotgun.   *Id.*   The Seventh Circuit applied *Gant*, which allows a search incident to arrest when "it is reasonable to believe the vehicle contains evidence of the offense of arrest."   *Id.* at 514 (quoting *Gant*, 556 U.S. at 343).   It determined that the search of the vehicle "easily satisfies the requirements for a valid vehicle search incident to arrest."   *Id.*   "Edwards was arrested for . . . driving a vehicle without the owner's consent . . . [a]nd it was entirely reasonable to believe that evidence of the offense of driving a vehicle without the owner's consent would be found in the [car]." *Id.* at 515.

This Court similarly concludes that it was, as required by *Gant*, "entirely reasonable to believe" that evidence related to the offense of unauthorized use of a vehicle would be found in the car Mr. Grice was driving.   *See id.*   It further concludes that unauthorized use of a vehicle is the type of offense that "suppl[ies] a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein."   *Gant*, 556 U.S. at 343–44.   Thus, the search of the car and of the bag was justifiable as a search incident to arrest.

The applicability of the automobile exception is discussed below.

### b.   The Automobile Exception

Searches conducted under the automobile exception "are not dependent on the right to arrest." *Carroll v. United States*, 267 U.S. 132, 158–59 (1925).    Rather, they are dependent on the police performing the search having "probable cause to believe that the vehicle contains contraband or evidence of a crime." *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993); *see also Ross*, 456 U.S. at 807–09 ("[P]olice may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband.").   Such a search can and often will include a search of any containers found inside the automobile: "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.   When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand."   *Ross*, 456 U.S. at 821. However, the scope of such a search under the automobile exception "is defined by the object of the search and the places in which there is probable cause to believe that it may be found."   *Id.* at 824.

In *Edwards*, the Seventh Circuit, in contrast to this Court, found that the search of Mr. Edwards's car "fit[] comfortably within the automobile exception," as "there was probable cause—not just 'reason to believe'—that the car would contain evidence of a crime."   *Edwards*, 769 F.3d at 516.   It elaborated: "[E]vidence of a vehicle's ownership is always relevant to the crime of driving a vehicle without the owner's consent, and ownership documents are often kept within a car.   When a car is reported stolen and is recovered, the police have probable cause to

look in the car for some evidence of ownership—especially so here, where the car lacked any license plates." *Id.*

The Seventh Circuit noted correctly that the Supreme Court's *Gant* opinion "did not elaborate on the precise relationship between the 'reasonable to believe' standard and probable cause, but the Court's choice of phrasing suggests that the former may be a less demanding standard." *Edwards*, 769 F.3d at 514. This Court will neither determine the relationship between the two standards nor determine whether the police had probable cause to search both the vehicle and the bag. It does, however, note that in contrast to the situation in *Edwards*, the relevant items in Mr. Grice's case were found inside a bag that was on Mr. Grice's person as he approached the car. *Ross* suggests that containers may be opened during an automobile search "when its purpose and its limits have been precisely defined" and further notes that the scope of the search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross*, 456 U.S. at 824. Given that the purpose and limits of the automobile search were far from "precisely defined," *see supra* 4–5, it is far from obvious that the scope of a search conducted under the automobile exception would have included the bag Mr. Grice was carrying.

Because of the unsettled nature of the differing standards for evidentiary searches under *Gant* and *Ross*, this Court does not determine whether the search would be allowable under the automobile exception.

## CONCLUSION

The Court finds that Mr. Grice can challenge the warrantless search of the bag found in the car searched after his arrest for unauthorized use of a motor vehicle. The Court rejects the Government's argument that the search was justifiable under the inventory search

exception to the Fourth Amendment's warrant requirement.    The Court finds the search of the car, and therefore of the bag found inside it, was justifiable as a search incident to arrest, as it was reasonable to believe that the car would contain evidence related to the offense for which Mr. Grice was arrested.    It does not determine whether the automobile exception would also justify the search.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Deshay Lamiel Grice's "Motion to Suppress," ECF No. 23, is **DENIED**.

**SIGNED** this _20_ day of **April 2022**.

_____

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**